**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DAVID WHITE** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | **NO.  14-7045** |
| **CORPORAL MICHAELANN** | : | |
| **ANDRUSIAK, et al.** | : | |

### MEMORANDUM

**KEARNEY, J.**                                                                          **August 19, 2015**

The following regrettable fact pattern resulting in over eight months of jail for David White, absent any proof of intentional conduct, does not state a constitutional claim and we must grant Defendants' motion for summary judgment:  A man on state parole as a sex offender is required, under Megan's Law, to report his present address at all times.   White allegedly provided his correct address to a state police official but she manually entered the wrong address ("920" Upland Street rather than "927" Upland Street) in the sex offender database, later admitting she may have heard it wrong or White gave her an incorrect address.   When he immediately received the print-out of his address, White did not check nor correct the inaccurate address.   When the county police parole department thereafter began checking addresses of Megan's Law registrants in Delaware County and could not find him at the wrongly-entered address and believed he violated his Megan's Law reporting obligations, a Delaware County Sergeant prepared an Affidavit of Probable Cause and a state Magisterial District Justice issued a warrant for White's arrest.   The Delaware County Sergeant did not contact White's known parole officer in preparing his Affidavit of Probable Cause to determine if he knew of White's residence.   White's state parole officer, upon later learning of the warrant and admittedly knowing his correct address and later questioning why Delaware County had his wrong address,

then called White for a meeting and arrested him under the outstanding warrant.   Given an alleged question of fact as to whether he intentionally concealed his true address and unable to post the $100,000 bail, White waited for his day in court by serving eight (8) months in prison. While the state parole officer knew of White's wrong address ("920" rather than "927") in the database after his arrest, he did not step forward.  After learning the detectives were visiting the "920" address contrary to the parole officer's known "927" address, the district attorney continued to prosecute.  White won his jury trial after losing his liberty for over eight months.

Defendants arrested White based on an affidavit of probable cause approved by a Magisterial District Justice.   White and his counsel did not adduce evidence of culpable conduct rising above negligence. White claims Defendants violated 42 U.S.C. §1983 by subjecting him to false arrest, false imprisonment and malicious prosecution.   White also brings a *Monell* supervisory liability claim against Delaware County for failure to train and state law claims for malicious prosecution and intentional infliction of emotional distress.  White's claims, however, require more than negligence, even at the level displayed by this group.   As such, his plead claims must be dismissed and he may explore pursuing any state law claims in state court available to him.

I.      ***Undisputed Facts***

In February 2012, the Pennsylvania Board of Probation and Parole ("PBPP") granted parole to Plaintiff David White ("White").  DelSOF ¶2.[1]  White knew Megan's Law required he register as a sex offender and report any change in address or employment to the Pennsylvania

---

[1] The Court's Policies require a Statement of Undisputed Material Facts ("SOF") and Appendix ("App.") filed in support of a summary judgment motion. Delaware County Defendants' SOF (ECF Doc. No. 52) shall be referred to as "DelSOF" and the Commonwealth Defendants SOF (ECF Doc. No. 47-2) shall be referred to as "ComSOF".

State Police within forty-eight (48) hours of such change.[2]   *Id.* ¶5, ComSOF ¶11.   White knew failing to report is a felony.  DelSOF ¶6.

In April 2012, White moved from the Community Corrections Center to 804 W. 3rd St., Chester, Pa.  His parole officer approved this move.  *Id.* ComSOF ¶9.  White dutifully registered his new address with the state police and on his new driver's license.  *Id.* ¶10; DelSOF ¶18.  In July 2012, Defendant Newton Condict IV ("Condict") became White's parole officer.  ComSOF ¶11.

On or about September 21, 2012, White moved from 804 W. 3rd St. to 927 Upland St., also in Chester, PA.  *Id.* ¶12.  White notified Condict of the address change and the two met at 927 Upland Street on September 21, 2012 to confirm White's residence.  *Id.* ¶¶13-14.  On September 22, 2012, White went to the state police barracks to update his address in the sex offender registry.  *Id.* ¶15.  There, White met with Defendant Corporal Michaelann Andrusiak ("Andrusiak").  *Id.* ¶17.  White recalls correctly giving his new address as "927" Upland St., Chester, PA.  *Id.* ¶18.  Andrusiak, however, entered the address in the sex offender registry as "920" Upland St., Chester, PA.  *Id.* ¶20.  White signed off on the electronic signature pad acknowledging the address change but he could not see the wrongly entered data on the computer screen.  *Id.* ¶22.  Andrusiak gave White a printout of the new information reflecting a new address of "920" Upland St., but White never looked at the printout and did not then realize Andrusiak entered incorrect information.  *Id.* ¶25; DelSOF ¶28.   Agent Condict confirmed White registered a new address.  ComSOF ¶¶26-277.

Beginning in September 2012, the United States Marshals Service directed Delaware County officials to check addresses of Megan's Law registrants throughout Delaware County.

---

[2] 42 USCA §16901 et seq.; 42 Pa.C.S.A. §9799.10 et seq.

DelSOF ¶52.   Defendant Delaware County Sergeant John Kelly ("Kelly") coordinated team assignments to check on address compliance of Megan's Law registrants.  *Id.*  ¶¶53, 70.   The agreed protocol required Kelly check each offender's address to make sure they resided at the address reflected in the state police records.  *Id.*  ¶63. For each registrant, Kelly gave teams of probation officers and detectives a "last current address" worksheet.  *Id.*  ¶56.  Kelly provided the team with information from county parole offices and also checked the Megan's Law website for a photo and last reported address of each person.  *Id.*  ¶¶55-56, 58.  Each team included a local probation officer as they may be familiar with or had contact with the individuals.  *Id.*  ¶57.

During September and October 2012, Delaware County detectives Mark Bucci ("Bucci") and Louis Grandizio ("Grandizio"), and Delaware County Parole Agent Keith Taylor ("Taylor") attempted to verify White's address.  Based on the database, they visited "920" Upland St. and White's former address, 804 W. 3rd St., on at least three (3) occasions but could not find White. DelSOF ¶¶73-74, 84; App.480-484.  The residents claimed not to know White as White never lived at "920" Upland St.  *Id.*  ¶92, 93. Detectives Bucci, Grandizio and Agent Taylor documented each visit.  Defendants Bucci, Grandizio, Taylor and Kelly claim they did not know Condict actually supervised White.  *Id.*  ¶¶62, 76, 95.

On December 11, 2012, Kelly collected the information reported on visits to White's last reported address, determined White violated his Megan's Law reporting requirements, and prepared an Affidavit of Probable Cause.  *Id.*  ¶64, App. 460-464.  There is no dispute the statements in the Affidavit of Probable Cause are accurate.  *Id.*  ¶97; ComSOF ¶38. Based on Kelly's Affidavit of Probable Cause, Delaware County Deputy District Attorney A. Sheldon Kovach ("DA Kovach") issued a criminal complaint and warrant for White's arrest, approved by a neutral magisterial district judge.  App. 460-464.

DA Kovach's criminal complaint charged White with three felonies for failure to comply with registration of sex offender requirements. ComSOF ¶35. DA Kovach based these charges on Kelly's Affidavit of Probable Cause reporting several failed attempts to verify White's address at 920 Upland St.

White contends the Affidavit of Probable Cause *omitted* material facts which would have confirmed active parole supervision over him by the state Board of Probation and Parole including his actual residence at "927" Upland St. He otherwise does not contest the Affidavit's factual accuracy. *Id.* ¶38. White claims Condict told Kelly, Grandizio, Bucci and Taylor he actually lived at "927," but supplies no evidentiary support for this claim and Condict does not provide any support for this assertion.[3] DelSOF ¶ 48. To the contrary, Condict swears he never had contact with Defendant Detectives Grandizio, Bucci or Kelly, or Delaware County Parole Agent Taylor regarding White prior to White's arrest. *Id.* ¶48.

On December 13, 2012, White's parole officer Condict received electronic notice through JNET (Justice Network) of a warrant issued by Delaware County for White's arrest. ComSOF ¶28; DelSOF ¶46. Condict phoned White and arranged to meet him. ComSOF ¶29, DelSOF ¶47. When they met, Condict took White into custody and transported him to a holding cell at the parole board's Chester Office. ComSOF ¶30. Condict advised Delaware County authorities he had White in custody. *Id.* ¶31. Delaware County authorities then assumed custody of White. *Id.* ¶32.

---

[3] In opposing summary judgment, White may not rest upon mere allegations or denials contained in his pleadings. *Lujan v. National Wildlife Fed'n,* 497 U.S. 871, 888 (1990). Rather, White must offer specific evidence to contradict Defendants' evidence, and show relevant factual disputes remain, to be resolved at trial. If White does not respond with specific evidence, the Court, when appropriate, shall grant summary judgment. Fed.R.Civ.P. 56(e).

Once in custody, White could not post the $100,000 bail. *Id.* ¶39.  On February 1, 2013, Andrusiak notified DA Kovach she checked the system and confirmed she filled out White's address as "920" Upland St, so "either he told me wrong or I heard him wrong . ." DelSOF ¶39. On April 19, 2013, DA Kovach subpoenaed the state parole board records maintained by Agent Condict relating to White's supervision.  ComSOF ¶40.  Kovach did not withdraw the charges against White, and White remained in custody until his jury trial on July 23 and 24, 2013.  SOF ¶41. The jury found White not guilty.  *Id.* ¶41.  DA Kovach is not a named defendant in this case.

## II.    *Analysis*[4]

Our Constitution does not guarantee only the guilty will be arrested and incarcerated pending trial, but it does guarantee individuals the right not to be deprived of liberty without due process of law.  With an arrest, due process is satisfied where it is based on probable cause. Here, a neutral magisterial judge reviewed sworn evidence by a county officer purportedly establishing probable cause to arrest White for Megan's Law violations.  The county deputy district attorney reviewed and agreed to prosecute.  This case should remind all members of our state and local judicial enforcement teams of their substantial responsibility in confirming data points with each officer having contact with a suspect; individual rights and liberties are of paramount importance and are not to be viewed lightly.  Where a plaintiff can show he was deprived of liberty because a reasonable official participating in this process *actually* knew or

---

[4] Summary judgment is appropriate where a movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). An issue is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  We consider "the facts and draw all reasonable inferences in the light most favorable to the plaintiff, the party who opposed summary judgment." *Lamont v. New Jersey*, 637 F.3d 177, 179 n.1 (3d Cir. 2011) (citing *Scott v. Harris*, 550 U.S. 372 (2007)).

should have known information was inaccurate or could not withstand a probable cause challenge, or if he can show an official supplying information relied on by individuals assessing probable cause acted with malicious or spiteful intent, he may show constitutional injury. The facts of this case, however, fall just short of these requirements. A cascade of unfortunate errors by both law enforcement and White which cannot be pinned to any one source caused White months of incarceration. Notably, White did not file state law claims of false imprisonment or unlawful continued incarceration. White's only claims seek redress for deprivation of liberty without due process. As there is no evidence of an absence of probable cause, no evidence White did not receive due process, and no evidence any Defendant state or county official acted with malice or spite in preparing the affidavit of probable cause, White's claimed liberty deprivation in violation of the Fourth Amendment cannot survive summary judgment.

To recover under 42 U.S.C. §1983, White must adduce evidence of a "violation of a right secured by the Constitution and the laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 48 U.S. 42, 48 (1988); *Martinez v. Freund*, No. 13-6294, 2015 WL 1608429 (E.D. Pa. 2015). Section 1983 imposes liability for violations of constitutionally protected rights, "not for violations of duties of care arising out of tort law." *Baker v. McCollan*, 443 U.S. 137, 146 (1979).

> The constitution does not guarantee that only the guilty will be arrested. If it did, §1983 would provide a cause of action for every defendant acquitted – indeed, for every suspect released. Nor are the manifold procedural protections afforded criminal defendants under the Bill of Rights "without limits." Due process does not require that every conceivable step be taken, at whatever cost, to eliminate the possibility of convicting an innocent person.

7

*Baker*, 443 U.S. at 145, citing *Patterson v. New York*, 432 U.S. 197, 208 (1977)(internal citations omitted).[5]

White's §1983 claim is predicated on three theories:  false arrest, false imprisonment and malicious prosecution.[6]  Each of these claims require White demonstrate absence of probable cause.

### *False arrest*

We require probable cause before impairing individual liberty.  To succeed on his §1983 claim for false arrest, White must demonstrate <u>absence</u> of probable cause.  *Orsatti v. N.J. State Police*, 71 F.3d 480, 482 (3d Cir. 1995) (Fourth Amendment prohibits a police officer from arresting a citizen except upon probable cause.)  While "probable cause to arrest requires more than mere suspicion;  . . . it does not require that the officer have evidence sufficient to prove guilt beyond a reasonable doubt." *Martinez v. Freund*, *3, citing *Orsatti*, 71 F.3d at 482-83.

> The obligation of local law enforcement officers is to conduct criminal investigations in a manner that does not violate the constitutionally protected rights of the person under investigation. Therefore, whether the officers conducted the investigation negligently is not a material fact. Indeed, for Fourth Amendment purposes, the issue is not whether the information on which police officers base their request for an arrest warrant resulted from a professionally executed investigation; rather, the issue is whether that information would warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested.

*Orsatti*, 71 F.3d at 484.

---

[5] As the Court in *Baker* further noted, while White's innocence of a charge contained in the warrant might be relevant to a state tort claim of false imprisonment, it is "largely irrelevant to his claim of deprivation of liberty without due process of law." *Id.*, 443 U.S. at 145.

[6] White also claims "false detention" which is another way of stating a claim for false imprisonment. *James v. City of Wilkes-Barre*, 700 F.3d 675, 682-83 (3d Cir. 2012), citing *Wallace v. Kato,* 549 U.S. 384, 389 (2007) ("The sort of unlawful detention remediable by the tort of false imprisonment is detention without legal process.")

Kelly's Affidavit of Probable Cause, based on reports of a missing White at 920 Upland Street by Defendants Grandizio, Bucci, Taylor and Andrusiak, adequately supports a finding of probable cause. Indisputably, White did not reside at his reported address. A neutral magisterial district judge agreed and issued a warrant for White's arrest.

Because there was probable cause to arrest White, he can prevail on his false arrest claim only if he proffers evidence Defendants "recklessly disregarded the truth" in the warrant application "*and* that a warrant application based on what [Kelly] should have told the judge would have *lacked* probable cause." *Wilson v. Russo*, 212 F.3d 781, 786 (3d Cir. 2000). White has no evidence any of the Defendants tasked with verifying his residence submitted false information or <u>intentionally</u> omitted material information regarding White's nearby address. Multiple errors caused Defendants to search for White at "920" and not "927," include White's own failure to update his address on his Pennsylvania driver's license, and failure to notice the alleged erroneously entered address by the state police. There is no evidence of unreasonable, reckless or spiteful behavior by any Defendant in conjunction with preparing the Affidavit of Probable Cause.

It is harder to digest this analysis as to Agent Condict, who concedes he knew White actually lived at "927" Upland and not "920". After discovery, there is no evidence Condict acted with malice or spite in conjunction with White's arrest. The law permits an officer to rely on an otherwise valid affidavit of probable cause in making an arrest and does not impose an additional duty to "explore and eliminate every theoretically plausible claim of innocence before making an arrest." *Craig v. Collins*, No. 13-1873, 2013 WL 5271521, *7 (E.D. Pa. 2013) (quoting *Kingsland v. City of Miami*, 382 F.3d 1220, 1228-29(11th Cir. 2004)). White's false arrest claim is based his own subjective opinion the police could have done a better job

investigating. [7] Even if true, this theory is insufficient to succeed on a false arrest claim. *Id.* at *7. ("[A] plaintiff cannot succeed by merely showing that the police could have done a better job of investigating.")

### *False Imprisonment*

A §1983 false imprisonment claim is based on the Fourteenth Amendment protection against deprivation of liberty without due process of law. *Martinez, supra,* at *6 (citing *Groman v. Twp. Of Manalapan,* 47 F.3d 628, 636 (3d Cir. 1995); *Craig v. Collins, supra.* White claims unlawful deprivation of his liberty without due process during his eight (8) month incarceration awaiting trial. White's pretrial restraint, however, was pursuant to an arrest supported by probable cause. But "an arrest based on probable cause [cannot] become the source of a claim for false imprisonment." *Martinez, supra,* at *6, (citing *Groman,* 47 F.3d at 636, *Baker,* 443 U.S. at 143-44); *see also Craig, supra* at *5 ("In sum, there can be no claim for false arrest or false imprisonment where the arrest was based on probable cause).

The Fourth Amendment, incorporated through the Fourteenth Amendment, requires probable cause prior to "any significant pretrial restraint of liberty." *Baker,* 443 U.S. at 142. "A person arrested pursuant to a warrant issued by a magistrate on a showing of probable cause is not constitutionally entitled to a separate judicial determination that there is probable cause to detain him pending trial." *Baker,* 443 U.S. at 143. Kelly's Affidavit of Probable Cause submitted to obtain the warrant for White's arrest supports a finding of probable cause. Because

---

[7] We note this argument departs from the allegations of White's Complaint, which pleads Defendants "contacted defendant Condict" and "Condict informed defendant Taylor and defendants Police Officers [Bucci, Kelly and Grandizio] that Plaintiff was instead living at 927 Upland Street, not 920 Upland Street." *See* Compl. ¶¶26-27. White does not offer any evidence to support these allegations.

White is unable to show lack of probable cause for his arrest, his false imprisonment claim under §1983 cannot survive.

### *Malicious prosecution*

To recover on his §1983 malicious prosecution claim, White must show: (1) defendants initiated a criminal proceeding; (2) the criminal proceeding ended in his favor; (3) the proceeding was initiated without probable cause; (4) defendants acted maliciously or for a purpose other than bringing him to justice; and (5) he suffered deprivation of liberty consistent with the concept of seizure as a consequence of legal proceeding.[8] *Jerri v. Harran*, No. 14-3861, 2015 WL 4717835, at *7 (3d Cir. 2015).

Probable cause at the time of arrest defeats any federal or state claim for malicious prosecution because the third element is not met. *Summers v. Freeman*, No. 13-2227, 2013 WL 6409309, *2 (E.D. Pa. 2013).   White's actual guilt or innocence of the crime charged is not material to the probable cause analysis. *Id.*, citing *Forde v. Home Depot*, No. 11-5823, 2011 WL 6372090, *2 (E.D. Pa. 2011).   Once probable cause is established for the arrest, a police officer has no duty to investigate further. *Id.*

Our Supreme Court has held it is reasonable for a police officer to proceed with criminal charges if a neutral magistrate issued a warrant. *Messerschmidt v. Millender*, --- U.S. ---, 132 S.Ct. 1235, 1245 (2012).   An exception allows suit only where "it is obvious that no reasonably competent officer would have concluded that a warrant should issue." *Id., citing Malley v. Briggs*, 475 U.S. 335, 341 (1986).   On the facts of this case, Kelly's belief a warrant should issue is reasonable.   Defendant Condict's belief in the validity of the warrant is also reasonable.

---

[8] White's state law malicious prosecution claim is also dismissed as it is identical except it does not require proof of the fifth element, deprivation of liberty. *Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782, 791 (3d Cir. 2000).

White's malicious prosecution claim may proceed against a police officer "if the officer knowingly provided false information to the prosecutor or otherwise interfered with the prosecutor's informed discretion." *Martinez, supra* at *6, quoting *Domenech v. City of Phila.*, No. 06-1325, 2009 WL 1109316, at *8 (E.D. Pa. 2009). There is no such evidence in this case.

As for Defendant Condict, who *knew* White *actually* lived at "927," and not "920," we cannot impose on him a duty to disregard the arrest warrant issued by a neutral magistrate. Condict's sworn testimony shows he questioned information in the warrant but Condict had no way of knowing whether White intentionally misreported his address to state police to avoid being located. His reliance on the validly issued arrest warrant is not improper as a matter of law. *Messerschmidt,* 132 S.Ct. at 1245.

White disputes Condict's and Kelly's testimony, and contends both officers omitted and disregarded material information which could have avoided his arrest, but this is insufficient to create a factual dispute in the absence of any discrediting evidence. *Orsatti,* 71 F.3d at 484 ("plaintiff cannot resist a properly supported motion for summary judgment merely by restating the allegations of his complaint, but must point to concrete evidence in the record that supports each and every essential element of his case.") Notwithstanding White's pure speculation, there is no evidence Condict knew or recklessly disregarded facts concerning whether Defendants intentionally misreported White's address as "920." To avoid summary judgment, White must offer specific evidence to contradict Defendants' evidence, and show relevant factual disputes remain, to be resolved at trial. White fails to do so.

Like the plaintiff in *Martinez*, White argues Defendants *should have* realized the mistaken arrest after arresting and questioning him. "Unfortunately for Plaintiff [White], none of [the exonerating evidence] vitiates probable cause *at the time of arrest*, which is the critical

12

moment of time in a malicious prosecution claim. *Id.* at *7; *see also Johnson v. Knorr*, 477 F.3d

75, 82 (3d Cir. 2007). "Any negligence that Defendant may have committed after the arrest and

after the prosecutor decided to charge Plaintiff may be relevant to a claim of unlawful continued

incarceration, but is not relevant for his claim here." *Id.*[9]

White also fails to offer evidence on the remaining elements of his §1983 malicious

prosecution claim. White offers no evidence at all regarding the fourth element, requiring

defendants "acted maliciously or for a purpose other than bringing plaintiff to justice" nor can he

show deprivation of a liberty without due process of law.

### *Qualified immunity*

Defendants are also entitled to qualified immunity. Qualified immunity protects "all but

the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. at

341. A court reviewing claims of qualified immunity must decide first whether plaintiff has

stated a violation of a constitutional right, and second, whether the right was clearly established

at the time of defendants' misconduct.

It is settled no constitutional right is implicated where an individual is arrested and

detained pursuant to a facially valid warrant. *Baker, supra.*

> The Fourteenth Amendment does not protect against all deprivations of
> liberty. It protects only against deprivation of liberty accomplished
> 'without due process of law. A reasonable division of functions between
> law enforcement officers – all of whom may be potential defendants in a
> §1983 action – is entirely consistent with 'due process of law.' Given the
> requirements that arrest be made only on probable cause and that one
> detained be accorded a speedy trial, we do not think a sheriff executing an
> arrest warrant is required by the Constitution to investigate independently

---

[9] The Third Circuit has not determined whether officers have a constitutional duty to inform a
prosecutor of exculpatory evidence learned after arrest, which may dissipate probable cause, and
support a continued unlawful incarceration claim. *See Wilson,* 212 F.3d at 792; *Martinez, supra*
at *7, n.10. In any event, White has not raised this claim, and it appears officers may have
informed the deputy district attorney of possible reporting errors after his arrest. SOF ¶¶39, 65.

> every claim of innocence, whether the claim is based on mistaken identity or a defense such as lack of requisite intent. ... The ultimate determination of such claims of innocence is placed in the hands of the judge and jury.

*Baker*, at 145-46.

As White fails to show Defendants violated any of his constitutional rights, the Defendants are entitled to qualified immunity. *Saucier v. Katz*, 533 U.S. 194 (2001).

### *Failure to Train, Supervise and Discipline*

Delaware County may only be held liable under 42 U.S.C. §1983 if White suffered constitutional injury resulting from policies, practices, decisions, or customs of the county. *Monell v. Dept. of Social Serv. of N.Y.,* 436 U.S. 658, 694 (1978). Probable cause sufficiently supports White's arrest. White suffered no constitutional injury. [10] His *Monell* claim fails. *Baker v. McCollan, supra.*

Disregarding the requirement he must show constitutional injury, White maintains Delaware County may be liable because it employed "deliberate indifference" to his constitutional rights. Even if White could overcome lack of constitutional injury, White offers no evidence whatsoever of any pattern of similar constitutional violations, of which the County had notice.[11] Defendant Delaware County is entitled to summary judgment on White's *Monell* claim.

---

[10] White chose not to allege state law claims for unlawful continued incarceration, or false imprisonment, and the district attorney is not a defendant in this case. We do not opine whether White could now pursue such claims in state court.

[11] Proof of deliberate indifference is very strict, requiring proof a municipal actor disregarded a known or obvious consequence of its action. "[W]hen city policymakers are on actual or constructive notice that a particular omission in their training program causes [county] employees to violate citizens' constitutional rights, the [county] may be deemed deliberately indifferent if the policymakers choose to retain that program." *Blythe v. Scanlan*, No. 14-7268,

14

### *State law claims*

The existence of probable cause to arrest White is fatal to his federal malicious prosecution claim.  As the requirements for state and federal malicious prosecution claims are virtually identical (with the federal claim requiring the additional element of deprivation of liberty), the reasons mandating summary judgment on White's federal malicious prosecution claim similarly require dismissal of the virtually identical state law claim.  Given White's remaining claim is solely a tort claim brought under Pennsylvania law, we decline to exercise supplemental jurisdiction and it is dismissed without prejudice.  *Borough of W.Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995).  Because we grant summary judgment on White's §1983 claims, and dismiss all claims over which we had federal jurisdiction, we need not entertain White's state law claim for intentional infliction of emotional distress.  *See* 28 U.S.C. §1367(a).

### III.    Conclusion

Defendants' conduct raises several questions concerning their internal fact-checking before arresting a parolee for an incorrect address.   While we can hope a police officer checking addresses on parolees would confer with the parole officer, we cannot find the failure to fact-check creates issues of fact to allow constitutional claims for false arrest, false imprisonment and malicious prosecution to proceed to trial.      As a matter of law, David White has not stated constitutional claims and we must grant summary judgment dismissing these claims and decline to exercise supplemental jurisdiction over potential Pennsylvania tort claims.    We grant Defendants' motion for summary judgment in the accompanying Order.

---

2015 WL 4743786, *4 (E.D. Pa. 2015) (quoting *Connick v. Thompson*, --- U.S. ---, 131 S.Ct. 1350, 1359 (2011)).